Daniei, Judge
 

 This is a Petition and
 
 Sdre Fadas,
 
 under the act of 1798
 
 ch.
 
 7, to vacate a patent granted
 
 *418
 
 by the State to
 
 James Holland
 
 deceased. The petition is filed by, and the
 
 scire facias
 
 sued out in the name of the plaintiff, who had obtained a subsequent patent for the same lands, and who suggests that the patent to
 
 llol-land
 
 had been obtained by fraud and false suggestion, in violation of the laws prescribing the manner of entering, surveying and patenting lands.
 

 Several grounds of detence have been taken, and among them there is one which is now for the first time, we believe, presented for adjudication in this State, and which as well on account of the principles which it involves, as of its extensive application, deserves to be fully and deliberately considered.
 

 It is objected, that a
 
 scire facias
 
 to reverse or vacate a patent can never be sued out by a younger, against an elder patentee. Cases have occurred, in which the question might iiave been raised. In
 
 Tyrre'l
 
 v.
 
 Manney,
 
 ( 2
 
 Murp. 375,)
 
 and
 
 Tyrrell
 
 v.
 
 Logan,
 
 (3
 
 Hawks
 
 319,) juni- or patentees unsuccessfully attempted to vacate elder patents, and in
 
 Greenlee
 
 v.
 
 Tate, (ante 1st vol. page
 
 300,) a junior patentee succeeded in such an attempt, but in none of them was this point made or considered. "We much regret that it was not, as probably some inconvenience, has resulted to the community from its having been formerly overlooked.
 

 In England, the writ of
 
 scire facias
 
 to vacate a patent issues from the Common Law side of the Court of Chancery, where the patent is enrolled,,and is there adjudicated, unless the pleadings terminate in an issue or issues of fact. If they do, then the pleadings are made up in the Hulls Office, and the record sent into the Court of King’s Bench, to be tried by a jury, where on a verdict had, the judgment is rendered, (l
 
 Mad. C. P.4.
 
 5.) As the office of the Secretary of State, where patente for land are enrolled, is an establishment distinct from any of the courts of justice in this State, and as it is a rule of law that a
 
 scire facias,
 
 founded upon any record, must issue from, and be returnable into the court where the record is, legislation became necessary to give jurisdiction to the courts, on disputed questions relative to
 
 *419
 
 the obtaining of patents fóí* lands. The Legislature therefore passed the act of 1798,
 
 (Taylor’s
 
 Rev.
 
 Appendix,') forth
 
 at purpose, which act directs a copy of the .grant from the Secretary’s office to he filed in the office of the clerk of the Superior Court of Law, with a petition by the plaintiff, by way of suggestion when he brings suit, whereupon the writ of
 
 scire facias
 
 issues, calling upon the defendant to show
 
 cause why the grant
 
 should not be vacated. The proceeding is a Common Law proceeding on the
 
 scire faáas,
 
 and the. defence should be at Common Law, and not as in Equity.
 

 On reading the act of 1798, it appears that the first eight sections contemplate only 'the establishment of
 
 k
 
 Court of Patents, to be held in the city of Raleigh, and the regulation of proceedings therein. The State only had a right to bring suits in that conrt by way of
 
 scire .facias,
 
 to try the validity of grants. The ninth section of the act gave a conciUTent jurisdiction with the
 
 Court
 
 of Patents, to the Superior Courts of Law of all grants and patents issued since the 4th day of July, 1776, for lands situated in the respective districts of such Superior Courts. The tenth section declares that when any person claiming title to land under a grant from the King, Lords Proprietors, or from the State of North-Carolina, shall consider himself aggrieved by any grant or patent, issued since the 4th day of July, 1776, to any person or persons against law, such person so
 
 aggrieved
 
 may file his petition in the Superior Court of Law, with a’copy of the patent, whereupon a
 
 sdre facias
 
 shall issue to the patentee, or person, owner or claimant under such grant, to show cause why the patent should not be vacated.
 

 Did the Legislature, when it passed the act of 1798, suppose that a jnnior patentee could
 
 be
 
 aggrieved, because the State had been imposed on or defrauded by an elder patentee ? Was not the tenth section enacted for the benefit of those persons who held patents from the King, Lords Proprietors, or the State and should be
 
 aggrieved
 
 by their titles being clouded, or endangered by a colour of title which might be set up, under a junior grant for the same land, obtained since the 4th day of July, 1776 ?’
 

 
 *420
 
 In tlie English books, there are many cases, where a
 
 save judas
 
 has been brought by the elder patentee to vá-cate the junior patent, and decrees and judgments rendered accoi'dingiy ; but wo have not been able to find a single adjudication to vacate a patent on a
 
 scire facias,
 
 in favor of a junior, against an' elder patentee. In the case of
 
 Bassett
 
 v.
 
 The Corporation of Torrington, (Dyer,
 
 276
 
 a,)
 
 the court
 
 decided
 
 that the last patentee could, liot bring a
 
 scire facias
 
 to vacate the eldest. The court said — “ it is contrary to the books of precedents, and the common course.” This decision was made at Trinity Term, 10 by the Master of the Rolls, assisted by two Judges. There are
 
 dicta
 
 to the contrary of this decision, but no adjudication as we can learn.
 

 The case in
 
 JenKins Centimes f page
 
 126,) was
 
 a súre facias
 
 by the first against the second patentee, to repeal the second patent, and the court held that if the first patentee be ousted, he might at bis election bring an assize, or a scire facias, if the patent be for lands, or for an office for life. The compiler, (a man of admitted ability,) adds a note at the foot of this case, in which lie says,. ‘ ‘ regularly the law is as aforesaid, but the younger patentee may have it against the elder.” To support what he has said in this note, he cites
 
 Dyer
 
 133, 198, and 14
 
 E. IV.
 
 3. We have examined the cases in
 
 Uyeri
 
 the first is
 
 Daniel’s
 
 case, which was a
 
 scire facias,
 
 brought by the second patentee, to reverse an elder patent to
 
 Daniel,
 
 on account of some irregularity ; but it does not appear that any judgment in the case was ever rendered by the court. The second case cited, does not support the principle laid down in Judge
 
 Jenkin’s
 
 note; for the
 
 Scire facias
 
 there, was by the elder patentee to vacate the younger patent. Thecase in the year book, (14
 
 E. 4,
 
 3,) we are unable to get, but if it supported the position for which it is cited, it would have been referred to in the subsequent case of
 
 Basset
 
 v
 
 Torrington,
 
 where the question came directly before the com . It is not cited in that case, therefore we conclude it is not a case in point. In
 
 Jackson
 
 v
 
 Lawton,
 
 (10
 
 John.
 
 23.) the only point for the decision of the court was, whether an
 
 *421
 
 elder patent could be set aside in an action of ejectment brought by the second patentee, on the ground of a mistake in the issuing of it. The court determined that it could not, but in delivering the judgment of the court, Judge
 
 Kent
 
 expresses his opinion that the elder patent may, by
 
 scire facias,
 
 be set aside at the instance of the junior patentee. The question now discussed was not argued by the counsel in .that cause, and the opinion is avowedly extra-judicial. On examining the books referred to by the learned judge, there is not to be found an adjudged case either in this country, or in England, to support his position. The judge remarks that it would be diflicult to assign a good reason, why the second pa-tentee should not have the writ. It seems to us that legal reasons of great weight not only may be urged, but have been urged under the sanction of high judicial authority, in opposition to such a course. In the case of
 
 Overton’s Lessee
 
 v
 
 Campbell
 
 &
 
 Lackney,
 
 (5
 
 Hay.
 
 206,) the learned judge
 
 Haywood
 
 remarks that “ the second. patentee cannot have the
 
 sciré facias,
 
 because he is not prejudiced by the first grant when it issued, and because the right to bring a real action is not transfer-ed by the second grant without a special recital.” In a case nearly analogous, it was observed by an eminent judge in Pennsylvania, (4
 
 Dal.
 
 204,
 
 5, “
 
 that innumerable mischiefs, and endless confusion would ensue from individuals taking upon themselves to judge when warrants, and surveys, and grants were to have validity.” In the case of
 
 Dodson
 
 v
 
 Cooke
 
 &
 
 Stuart,
 
 (1
 
 Ten. Rep.
 
 314,) it was decided after full argument, that “ a subsequent grantee cannot avoid a prior grant for fraud, misrepresentation or deception in the grantee, because that deception did not operate to his prejudice, having then no right to bo prejudiced.
 
 Res inter alios non
 
 nocet.”— In England, we must consider the question as at rest. •In 4th
 
 Coke’s Institute, (page
 
 88,) we arc told that the writ -of
 
 scire facias
 
 to repeal letters patent, doth lie in three cases: 1st. when the King, by his letters patent, doth grant by several letters patent, one and the self same thing to several persons, the
 
 former
 
 patentee shall
 
 *422
 
 have a
 
 scire Jadas
 
 to repeal tlie second patent. 2illy. Where the King doth grant any thing upon a false sug-gestión, the King by his prerogative,
 
 jure regio,
 
 may have a
 
 sd. fa.
 
 to repeal his own grant. Sdly. When the King doth grant any thing which by law he cannot grant, he (the King) jure
 
 regio,
 
 may have a
 
 sd. fa.
 
 to repeal his own letters patent. Baron
 
 Carnijns
 
 lays down ‘ the law thus
 
 (Comyn’s Digest, Patent F,
 
 4, 5). “ If the King grant by his letters patent the same thing to several persons, a
 
 scire fadas
 
 lies for repealing the second patent; and in such case, the scire
 
 fadas
 
 shall be brought by the first patentee. A
 
 scire fadas
 
 by the
 
 last
 
 patentee should
 
 not
 
 be allowed, though he seems to have -the right with him. If the King grants the same thing to divers by two several patents, the
 
 second patentee cannot
 
 have a
 
 scire fadas
 
 against
 
 the first.”
 
 The learned and correct
 
 Sergt. Williams,
 
 in his note to 2d
 
 Saunders, (page
 
 72 p.) lays it down — “ If the King by his letters patent grants the same thing to two persons,
 
 the first pa-tentee
 
 may have a
 
 scire facias
 
 to repeal the
 
 second
 
 patent, but the
 
 second patentee
 
 cannot bring
 
 a scire facias
 
 though the better right should be in him.” Explaining
 
 thefirst
 
 part of this position, he adds, “ where apatent is granted
 
 to the prejudice of another,
 
 he may have a
 
 scire fadas
 
 to repel it at the King’s suit; as if a market or fair be granted to the annoyance and prejudice of an
 
 undent
 
 market or fair of another, in this case,' the King is of right to permit the person
 
 prejudiced
 
 by the patent, upon petition to use
 
 his
 
 name for the repeal of it in a
 
 scire fadas,
 
 at the King’s suit to prevent multiplicity of actions upon the case which will lie, notwithstanding such void patent. And indeed it has been holdcn, that the person
 
 prejudiced
 
 by the patent may upon the enrollment of it in Chancery, have a
 
 sci-re facias
 
 to repeal it as well as' the King.”
 

 Considering these authorities as decisive — satisfied that it is the established rule of the Common La'w, that no one is prejudiced by the King’s grant but he who had a prior grant for, or an ancient vested right in, the same tiling — that no other subject could have a
 
 scire facias
 
 to repeal the King’s granC-that in all other cases the
 
 scire fa-
 
 
 *423
 

 das
 
 must be brought by the King,
 
 jure regio-,
 
 himself to re» peal his own grant — it seems to us demonstrable on examining the whole act of 1798, that this, broad, ancient, wise, and well established distinction, is observed and kept up by the General Assembly. The remedy is for the State, where the State has been defrauded, .and a
 
 sci-re facias
 
 may also be sued out by an individual, when such individual is
 
 aggrieved. “Aggrieved”
 
 in the language of our Legislature, is synonymous with “prejudiced” in the text books. This idea, if it could receive confirmation, is strengthened by the words used in the tenth section, setting forth who may he aggrieved, and
 
 h
 
 aw such injury may arise.
 
 “
 
 When any person or persons claiming titles to lands in this State, under a grant' or patent
 
 from the King of Great Britain,
 
 any of the
 
 Lords Proprietors of North-Carolina,
 
 or from the State of North-Carolina, shall consider himself or themselves aggrieved by any grant or patent made since the 4th of July, 1776, &c.” The two first classes of cases cannot include any but elder patentees aggrieved by younger patents ; and the third class must be construed as applying to such as, like those embraced in the first and second classes, are entitled to the
 
 like remedy,
 
 because they suffer the like grievance — -that is to say, they are prejudiced, or in danger of being prejudiced, by a grant to another of the lands previously granted to them. If this point had ever been distinctly brought to the notice of the court, and ,.had received a different determination, we would hesitate- long before we consent* to change , the rule.— But as, we understand the previous cases, this is the first time the question has been stirred. We therefore feel the less reluctance in delivering this opinion, satisfied that it is consonant to the will of the Legislature, in conformity to fundamental principles, and conducive to the security of titles., and the repose of the community.
 

 Judgment is to be reversed, and judgment to, be rendered for the defendants with costs.
 

 Per Curiam. — Judgment reversed.
 
 *
 

 *
 

 Two other cases, viz:
 
 John Bradley
 
 v
 
 Joshua, Souther,
 
 from Rutherford, and
 
 Samuel Greenlee
 
 v
 
 Samnel C. Tate,
 
 from Burke, which were,
 

 i to the dates of the several grants, similar to the above stated ease, were al-o decided upon the same group'*.